IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SHARNA BARR,

           Plaintiff,

v.                          CIVIL ACTION NO. 1:07CV15
                                    (Judge Keeley)

MICHAEL ASTRUE, COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION,

           Defendant.

### ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B), Rule 72(b), Federal Rules of Civil Procedure and Local Court Rule 4.01(d), on February 2, 2007, the Court referred this Social Security action to United States Magistrate James E. Seibert with directions to submit proposed findings of fact and a recommendation for disposition. On August 21, 2007, Magistrate Judge Seibert filed his Report and Recommendation ("R&R") and directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections with the Clerk of Court within ten (10) days after being served with a copy of the R&R. On September 4, 2007, Sharna Barr ("Barr"), through counsel, Regina L. Carpenter, filed objections to the Magistrate's Report and Recommendation. On September 12, 2007, the Commissioner responded to Barr's objections.

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

## I.  PROCEDURAL BACKGROUND

On March 31, 2004, Barr filed an application for disability insurance benefits ("DIB") and on February 23, 2004, filed an application for supplemental security income ("SSI") alleging disability since May 28, 2001 due to headaches, jaw spasms, pain in her neck, shoulders and back, and nerves. The Commissioner denied both claims initially and on reconsideration. Following Barr's request for a hearing, on November 1, 2005, an ALJ conducted a hearing at which Barr and a vocational expert ("VE") appeared and testified. On February 3, 2006, the ALJ determined that Barr was not disabled. The Appeals Council denied Barr's request for review. On February 2, 2007, Barr filed this action seeking review of the final decision.[1]

## II.  PLAINTIFF'S BACKGROUND

At the time of the hearing on November 1, 2005, Barr was thirty-one (31) years old and had a high school education.  Her prior relevant work experience included employment as a retail cashier, a grocery store cashier/stocker, and a nurse's aide.

---

[1]  In his R&R, the Magistrate Judge noted that on August 31, 2001 Barr had filed a prior application for DIB and SSI. The ALJ denied both of these claims on November 8, 2002 and Barr did not appeal that decision.

### ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

### III.   ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. § 404.1520 (2000), the ALJ found that Barr:

1.  met the nondisability requirements for a period of disability and DIB set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of this decision;

2.  had not engaged in substantial gainful activity since the alleged onset of disability;

3.  had fibromyalgia, migraine headaches, lumbar strain, and anxiety disorders that are considered severe based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c) but failed to meet or medically equal one of the listed impairments in Appendix a, Subpart P, Regulation No. 4;

4.  was not totally credible in her allegations regarding her limitations;

5.  retains the residual functional capacity to perform a wide range of sedentary physical exertional work-related activities with a sit/stand option and the following additional limitations, no climbing, no exposure to hazard such as unprotected heights or dangerous and moving machinery or temperature changes;

6.  was unable to perform any of her past relevant work;

7.  was considered a "younger individual";

8.  has a high school education;

9.  has no transferable skills from any past relevant work;

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

10.   due to exertional limitations cannot perform the full
      range of sedentary work; however, using Medical-
      Vocational Rule 201.25 as a framework for decision-
      making, can perform a significant number of jobs in the
      national economy, including surveillance system monitor,
      with 1,900 jobs regionally and 97,000 job nationally, an
      addresser/stuffer with 2,000 jobs regionally and 240,000
      nationally, a general sorter with 900 jobs regionally and
      25,000 job nationally; and

11.   pursuant to 20 CFR §§ 404.1520(g) and 416.920(g), was not
      under a "disability," as defined in the Social Security
      Act, at any time through the date of this decision.

## IV.   <u>MEDICAL EVIDENCE</u>

Barr's relevant medical history includes the following:

1.    A June 2, 2002 letter from Brian D. Houston, M.D. to John
Manchin, D.O., indicating that Barr (then Porter) had fibromyalgia
syndrome. Houston recommended that Barr lose weight and start
exercising either by walking or swimming. He prescribed
Amitriptyline;

2.    Dr. Houston's Office notes from June 2, 2002 documenting
the following findings:

      On physical examination, the patient is a very
      pleasant, young white female. The patient is 5
      foot 6 inches and weighs 140 pounds. Vital
      signs were normal. Examination of the head,
      neck, eyes, ears, nose and throat; The pupils
      are equal, round and react to light. Discs
      were not examined. Thyroid gland is small.
      Carotid pulsations are normal without bruits.
      There is no adenopathy of the neck noted.
      Chest is clear. Cardiac examination is
      unremarkable. Abdominal examination, there is
      no palpable liver, kidney, or spleen. Bowel
      sounds are active. Peripheral pulses are
      normal. On musculoskeletal examination, the
      skin of the fingers is normal. The MCPs and

4

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

PIPs and wrists are normal. Elbows are normal.
Shoulders are normal. Neck has full range of
motion. Thoracic and lumbar spine are
diffusely tender. Hips have full range of
motion. There is a scar in the right knee
laterally and anteriorly. There is crepitus of
the right knee. Ankles are normal. The MTPs
are normal.

The patient has allodynia. There is a tender
point of the lateral epicondyle of the elbows.
There is a tender point in the mid portion of
the trapezius muscle both left and right.
There is a tender point of the supraspinatus
area left and right. There is an occipital
tender point left and right. There is a tender
point at C5 left and right There is a tender
point at the junction of the 2nd rib and
sternum bilaterally. There is a tender point
overlying both S1 joints. There is a tender
point in both buttocks. There is a tender
point of the troshanteric bursal area both
left and right. There is a tender point of the
medial fat both left and right. Reflexes are
normal in the upper and lower extremities.

ASSESSMENT:
1.    Fibromyalgia syndrome

RECOMMENDATION:

     I discussed the above with the patient
and her mother in some detail. I told her that
she needs to get on a reasonable diet and try
to lose her excess weight in addition, I have
told her that she needs to exercise either
swimming or walking. I have suggested that she
walk. She is to start walking a mile every
other day. In addition, I have elected to
place her on Amitriptyline, 10 mg 1 tablet
p.o.q.h.s. watching out for dry mouth,
drowsiness and constipation. I have given her

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

30 of these with 1 refill. She is to return to
see me again in one month;

3.    A February 21, 2003 office note from Philip J. Chua,
D.O., indicating Barr complained of back pain. Chua assessed
cervical region sprain/strain, dorsal/thoracic sprain/strain,
lumbar sprain/strain, somatic dysfunction cervical, somatic
dysfunction thoracic, somatic dysfunction lumbar, myofascial
syndrome. He prescribed a trigger point injection of 20 mg. Depo
medrol, .3cc Lido, .3cc Marcain;

4.    A March 3, 2003 office note from Dr. Chua indicating Barr
complained of body aches with worse pain in her neck, upper back
and shoulder blades. He assessed somatic dysfunction cervical,
somatic dysfunction lumbar, somatic dysfunction thoracic,
dorsal/thoracic sprain/strain, cervical region sprain/strain,
lumbar sprain/strain, fibromyalgia. He prescribed Vicodin ES and a
follow-up appointment in a month;

5.    A March 18, 2003 office note from J. Michael Anthony
Arcure, P.A.C. indicating Barr complained of left ear pain and
anxiety controlled on Xanax. He prescribed e-mycin 33 and  Xanax
which he increased to twice daily and gave Barr samples of Zoloft;

6.    A March 25, 2003 office note from Dr. Chua indicting Barr
complained of back and neck pain. He assessed cervical region
sprain/strain, somatic dysfunction cervical, somatic dysfunction
thoracic and dorsal/thoracic sprain/strain. He listed medications
as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc
Marcaine;

7.    An April 3, 2003 office note from Dr. Chua indicating
Barr hurt her foot and had a small abrasion with swelling at the
base of the toe. He assessed sprained, foot and abrasion of the
skin. He listed medications as trigger point injection , 20 mg.
Depo medrol, .3cc Lido, .3cc Marcaine;

8.    An April 16, 2003 office note from Dr. Chua indicating
complaints of back pain. He assessed cervical region sprain/strain,
somatic dysfunction cervical, somatic dysfunction thoracic,
dorsal/thoracic sprain/strain, lumbar sprain/strain and somatic
dysfunction lumbar. He did not list any medications;

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

9.    An April 29, 2003 office note from Dr. Chua indicating Barr complained of back pain. He assessed cervical region sprain/strain, somatic dysfunction cervical, somatic dysfunction thoracic, dorsal/thoracic sprain/strain, lumbar sprain/strain, somatic dysfunction lumbar and headache migraine. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Relpax and B-12 injection;

10.    A May 7, 2003 office note from Dr. Chua indicating continued complaints of back pain. He assessed cervical region sprain/strain, somatic dysfunction cervical, somatic dysfunction thoracic and dorsal/thoracic sprain/strain. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax and Zoloft;

11.    A May 13, 2003 office note from Dr. Chua indicating Barr complained of back pain. He assessed cervical region sprain/strain, somatic dysfunction cervical, somatic dysfunction thoracic, dorsal/thoracic sprain/strain and myofacial pain syndrome. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine;

12.    A May 19, 2003 office note from Dr. Chua indicating Barr complained of ear pain, externally and down the neck. He assessed otis extena, somatic dysfunction lumbar, somatic dysfunction thoracic. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone and Vosol otic;

13.    A May 30, 2003 office note from Dr. Chua indicating Barr continued to complain of back pain. He assessed cervical region sprain/strain, somatic dysfunction cervical, somatic dysfunction thoracic, dorsal/thoracic sprain/strain, sacroiliac sprain/strain and otitis externa L. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft and hydrocodone;

14.    A June 2, 2003 office note from Dr. Chua indicating Barr continued to complain of back pain in upper right back and noted that she stated it ached quite a bit and kept her from sleeping. He further noted that she complained of a little neck stiffness but had no fevers or chills. He assessed cervical region sprain/strain,

somatic dysfunction cervical, somatic dysfunction thoracic, dorsal/thoracic sprain/strain, lumbar sprain/ strain, somatic dysfunction lumbar and anxiety disorder. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Cipro otic and Ambien;

15. A June 17, 2003 office note from Dr. Chua indicating continuing complaints of back and neck pain. He assessed cervical region sprain/strain, somatic dysfunction cervical, somatic dysfunction thoracic, dorsal/thoracic sprain/strain, lumbar sprain/ strain and somatic dysfunction lumbar. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft and hydrocodone;

16. A June 23, 2003 office note from Dr. Chua indicating Barr's chief complaint was right shoulder pain and pain in the left shoulder area on her scapula, her typical trigger point, with radiation to her arm and up the right side of her neck. He assessed myofacial pain syndrome. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft and hydrocodone;

17. A July 9, 2003 office note from Edwin J. Morris, D.O., indicating Barr complained of back and neck pain. He assessed cervical region sprain/strain, somatic dysfunction cervical, somatic dysfunction thoracic, dorsal/thoracic sprain/strain and sacroiliac sprain/strain. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft and hydrocodone;

18. A July 17, 2003 office note from Dr. Morris indicating Barr complained of lower back pain for one day with pain radiating in her hips and legs, numbness, burning and tingling in legs of two days duration with no known injury. He assessed cervical region sprain/strain, somatic dysfunction cervical, somatic dysfunction thoracic, dorsal/thoracic sprain/strain and sacroiliac sprain/strain. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone and Flexeril;

19. An August 27, 2003 office note from Dr. Morris indicating Barr complained of neck pain for one week and sore throat, cough,

congestion and otalgia for one day. He assessed upper respiratory infection (cold virus), somatic dysfunction cervical and somatic dysfunction thoracic. He prescribed Hycotuss and Claritin and noted an increase in Zoloft to 150 mg daily. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, Vivelle DOT and hydrocodone; ;

20. A September 4, 2003 office note from Dr. Morris indicating Barr complained of pain in the right shoulder blade and a skin rash. He assessed somatic dysfunction thoracic and tinea versicolor (fungal skin infection). He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Selsun;

21. A September 15, 2003 office note from Brenda M. Holcomb, PAC indicating Barr complained of a headache with nausea for four days and noted that Barr reported the hydrocodone was no longer helping. She assessed myofacial pain syndrome, fibromyalgia, headache, migraine and nausea. She prescribed phenergan and vicoprophen and listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

22. A September 17, 2003 office note from Ms. Holcomb indicating Barr complained that the left side of her neck was swollen, that her ear felt full and that she had pressure around her left eye. She assessed left otitis externa. She prescribed Keflex and cortisporin Otic and listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Flexeril and Vivelle DOT;

23. A September 19, 2003 office note from Ms. Holcomb indicating that she removed a lesion from Barr's right thigh. She assessed NEVI. She listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

24. A September 30, 2003 office note from Ms. Holcomb indicating Barr complained of head and chest congestion with non-productive cough, intermittent fever, body aches for two days and a headache. She assessed bronchitis, asthmatic and headache. She prescribed Zithromax, Nubain, Phenergan and listed medications as

trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

25. An October 28, 2003 office note from Dr. Morris indicating Barr complained of neck and back pain and otalgia. He prescribed a B-12 injection and a flu vaccine. He assessed cervical region sprain/strain, dorsal/ thoracic sprain/strain, lumbar sprain/strain and lumbosacral sprain/strain. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

26. A November 13, 2003 office note from Dr. Morris indicating continuing complaints of back and neck pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain and lumbosacral sprain/strain. He listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

27. A December 1, 2003 office note from Ms. Holcomb indicating Barr complained of fatique. She prescribed a B-12 DEF and listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

28. A December 15, 2003 office note from Ms. Holcomb indicating Barr complained of a productive cough of one week, denied any fever and requested refills of her pain medication. She assessed acute bronchitis and fibromyalgia. She prescribed Zithromax and Tessalon Perles and hydrocodone and listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

29. A December 18, 2003 office note from Dr. Morris indicating Barr complained of neck and back pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain and lumbosacral sprain/strain. He prescribed a B-12 injection and listed medications as trigger point injection, 20 mg. Depo medrol, .3cc Lido, .3cc Marcaine, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

30. A January 8, 2004 office note from Ms. Holcomb indicating Barr complained of headache and back pain and noted that Barr reported that she had no relief from Motrin and hydrocodone. She assessed thoracic strain. She prescribed Nubain and Phenergan and listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

31. A January 15, 2004 office note from Dr. Morris indicating Barr continued to complaint of neck and back pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain and lumbosacral sprain/strain. He listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

32. A January 21, 2004 office note from Dr. Morris indicating Barr complained of neck and back pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain and lumbosacral sprain/strain. He listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

33. A January 29, 2004 office note from Ms. Holcomb indicating Barr complained of headache and nausea and reported that she had visited the Fairmont General emergency room on January 28, 2004 where she was placed on amoxil for ten days for otitis media ( middle ear infection) and headache. Holcomb prescribed Nubain and Phenergan and listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

34. A February 5, 2004 report from Rakesh Vohra, M.D. and Robert Beto, II, M.D., indicating normal internal cardiac chamber dimensions, left ventricular ejection fraction 55-60 % without wall motion abnormality, no pericardial effusion, no intercardiac mass or thrombi and an impression of normal left ventricular systolic function and no significant valvular disease;

35. A February 5, 2004 report from Thuan-Phuoung Nguyen, M.D., indicating left PICC catheter tip is in the projection of the distal SVC. The lungs are clear. The cardiac size is normal;

36. A February 6, 2004 discharge diagnoses from Kenneth Belcher, M.D. indicating a diagnosis of herpes simplex virus type

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

2, meningitis/encephalitis, fibromyalgia, depression, history of cervical cancer, bradycardia with questionable second degree AV block;

37. A February 12, 2004 office note from Dr. Morris indicating Barr received a B-12 injection and a refill for hydrocodone. He assessed anemia. He listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

38. A February 26, 2004 office note from Ms. Holcomb indicating Barr reported a history of hysterectomy in 1997 and was now having hot flashes for two months. Barr requested a change from Vivelle DOT to Premarin. Holcomb stopped the Vivelle and started Premarin and listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

39. A March 6, 2004 office note from Dr. Morris indicating Barr complained of neck and back pain and a problem with irritable bowel syndrome and constipation, He assessed dorsal strain.  He prescribed Sennakot and listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT [2] and Flexeril;

40. A March 8, 2004 office note from Dr. Morris indicating Barr complained of a productive cough, sore throat, headache otalgia and laryngitis of one week. He assessed acute sinusitis. He prescribed a Z-pak and nalex and listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

41. A March 18, 2004 office note from Dr. Morris indicating that he gave Barr a B-12 injection after assessing anemia. He listed medications as trigger point injection, 20 mg. Depo medrol, Xanax, Zoloft, hydrocodone, Vivelle DOT and Flexeril;

42. An April 14, 2004 unsigned office note indicating Barr complained of back pain and an assessment of cervical region sprain/strain, dorsal thoracic sprain/strain, lumbar sprain/strain,

---

[2]     Even though Ms. Holcomb had noted a change from Vivelle dot to Premarin, the medical records continued to list Vivelle dot.

lumbosacral sprain/strain and a B-12 deficiency. Barr received a B-12 shot;

43.    An April 23, 2004 office note from Dr. Morris indicating Barr complained of neck and back pain and off and on numbness in the right arm. Morris assessed fibromyalgia (multiple tender and tense muscle groups). He noted her medications as hydrocodone, Xanax, Zoloft, Premarin, Effexor and prescribed four trigger point injections[3];

44.    An April 28, 2004 office note from Dr. Morris indicating Barr complained of left ear pain and swelling in her neck. He assessed otitis external (infection in outer ear canal), constipation and fibromyalgia (multiple tender and tense muscle groups). He prescribed cortisporin otic drips, Auralgan for ear pain and listed medications as listed medications as Xanax, Zoloft, hydrocodone, Premarin and Effexor;

45.    A May 5, 2004 office note from Dr. Morris indicating Barr had a follow-up examination for otalgia and that she reported that the antibiotic ear drops did not resolve the problem and that the problem originated from a fracture of the side of her face three years ago. He assessed mastoiditis. He prescribed Biaxin and noted her medications as hydrocodone, Xanax, Zoloft, Premarin and Effexor. He also referred her to Dr. Darastotal for an ENT examination;

46.    A May 18, 2004 psychological evaluation from Tina M. Yost, Ed.D, indicating a diagnosis of Axis I: obsessive compulsive disorder, under control with medication, Axis II: no diagnosis, Axis III: fibromyalgia, scoliosis, migraines, TMJ, by self report and a fair prognosis. Dr. Yost indicated that Barr had normal concentration, persistence, pace, and immediate memory but had markedly deficient recent memory;

47.    A May 27, 2004 office note from Dr. Morris indicating Barr complained of back pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain

_____

[3]    Even though the medical records contain other references that Barr received trigger point injections, the notes are unclear regarding the number and frequency of the trigger point injections.

and lumbosacral sprain/strain. He noted her medications as hydrocodone, Xanax, Zoloft, Premarin and Effexor and administered a B-12 shot;

48. A June 3, 2004 office note from Dr. Morris indicating Barr complained of left side back pain and requested to change from oral Premarin to a patch. He assessed lumbosacral sprain/strain, cervical region sprain/strain, dorsal/thoracic sprain/strain and lumbar sprain/strain. He noted her medications as hydrocodone, Xanax, Zoloft, Premarin, Effexor and administered a trigger point injection lumbar paravertebral muscle on the right;

49. A June 10, 2004 office note from Dr. Morris indicating Barr complained of neck and back pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain and lumbosacral sprain/strain. He noted her medications as Xanax, hydrocodone, Zoloft, Premarin and Effexor;

50. A June 10, 2004 report from Diego A. Ponieman, M.D., regarding a DDS physical. Dr. Ponieman indicated an impression of fibromyalgia, anxiety disorder with panic attacks, temporomandibular joint dysfunction, failed medical management, status post surgery x 3, history of scoliosis, excessive fatigue, migraine headaches. His examination revealed "multiple tender points including insertion of neck muscles and two occiput pectoralis, costochondral junction, just posterior to the hips bilaterally, upper glueal area, mid scapular area and C7";

51. A June 16, 2004 office note from Dr. Morris indicating Barr complained of ankle pain after a fall down basement steps, He assessed a sprain of the right ankle. He noted her medications as hydrocodone, Xanax, Zoloft, Premarin and Effexor and ordered an x-ray of the ankle. He directed Barr to rest, apply ice to her ankle with compression and elevation;

52. A June 24, 2004 office note from Dr. Morris indicating Barr continued to complain of back pain and noted she requested a trigger point injection in her left jaw secondary to TMJ. He assessed cervical region sprain, dorsal/thoracic sprain/strain, lumbar sprain/strain, and temporomandibular joint syndrome or TMJ (sore jaw joint). He noted her medications as hydrocodone, Xanax,

Zoloft, Premarin and Effexor and administered a trigger point injection;

53. A June 29, 2004 office note from Dr. Morris indicating Barr complained of elbow pain with swelling and burning due to a fall. He assessed contusion of the elbow. He noted her medications as hydrocodone, Xanax, Zoloft, Premarin and Effexor. He placed her arm in a sling and ordered an x-ray;

54. A July 8, 2004 office note from Dr. Morris indicating Barr continued to complain of neck and back pain, headaches, insomnia and noted that she reported the Zoloft was becoming ineffective. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain, lumbosacral sprain/strain, fibromyalgia (multiple tender and tense muscle groups) and depression. He noted her medications as her hydrocodone, Xanax, Premarin and Effexor. Dr. Morris stopped Zoloft and prescribed Wellbutrin XR 150 mg for 3 days then 300 mg after 1 week;

55. A July 8, 2004 Psychiatric Review Technique from James Capage, Ph.D, indicating an examination of Barr followed by a diagnosis of obsessive compulsive disorder under control with medication. He further indicated that Barr had a mild degree of limitation in restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace and that she had had no episodes of decompensation of extended duration;

56. A July 9, 2004 Physical Residual Functional Capacity Assessment from Fulvio R. Franyutti, indicating Barr could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about 6 hours in an 8 hour work day, sit for a total of about 6 hours in an 8 hour work day, had unlimited ability to push and/or pull, had no postural, manipulative, visual or communicative limitations, had unlimited environmental limitation for wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation and hazards but must avoid concentrated exposure to extreme heat or extreme cold. He noted that Barr was "partially credible" and appeared to magnify her symptoms and that her allegations were not fully

supported by the findings. He determined that she was capable of performing medium work;

57.  A July 29, 2004 office note from Dr. Morris indicating Barr complained of neck pain with headache, wanted injections in both TMJs and requested pain medication. He assessed cervical region sprain/strain and dorsal/thoracic sprain/strain He noted her medications as hydrocodone, Xanax, Zoloft, Premarin and Effexor. Dr. Morris further indicated that Barr requested new prescriptions for Selsun and Zoloft and will call with RX numbers for the other two she needs refilled;

58.  An August 9, 2004 office note from Dr. Morris indicating Barr received a B-12 injection;

59.  An August 27, 2004 office note from Dr. Morris indicating Barr "would like new anxiety medication" because Zoloft was no longer working. He assessed depression. He noted her medications as hydrocodone and Xanax, discontinued the Zoloft and started Effexor[4];

60.  A September 9, 2004 office note from Dr. Morris indicating Barr received a B-12 shot;

61.  A September 23, 2004 office note from Dr. Morris indicating Barr complained of back and neck pain. He assessed dorsal/thoracic sprain/strain, lumbar sprain/strain and lumbosacral sprain/strain. He noted her medications as hydrocodone, Xanax, Zoloft, Premarin and Effexor;

62.  An October 7, 2004 office note from Dr. Morris indicating Barr complained of anemia and fatigue. Dr. Morris administered a B-12 injection;

63.  An October 23, 2004 report from Dr. Morris indicating Barr complained of cough, head congestion, sore throat, tight chest but no fever. Dr. Morris diagnosed sinusitis, maxillary, chronic and prescribed Biaxin and a follow-up in a week;

---

[4]      Even though Barr's medications had previously listed Effexor, Dr. Morris' note reflects that he started Effexor.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

64.  An October 27, 2004 report from Dr. Morris indicating Barr complained of flu symptoms. He assessed sinusitis, acute, and gastroenteritis, viral. Dr. Morris discontinued the Basin and prescribed Omicef;

65.  A November 16, 2004 office note from Larry L. Fitzwater, PAC, indicating Barr complained of otalgia and reported a recent panic attack. He assessed otitis, external, sinusitis, acute, and anxiety syndrome. He prescribed a B-12 shot, Omnicef, Xanax, Cortaine B, Lexapro and noted her medications as hydrocodone, Zoloft, Premarin and Effexor;

66.  A November 23, 2004 office note from Larry L. Fitzwater, PAC, indicating Barr stated she had a rash around her left ear and thought that either a 24-hour virus or the antibiotic caused diarrhea lasting four days. He assessed gastroenteritis, anxiety syndrome and rash fungal. He prescribed OTC hydrocortisone cream, Xanax and hydrocodone, and instructed Barr to drink electrolyte type fluids;

67.  A November 28, 2004 office note from Dr. Morris indicating an appointment for skin tag removal and sinus congestion with pain and yellow discharge. He assessed back pain, wart removal, depression, acute sinusitis and TMJ. Dr. Morris discontinued Effexor and started Lexapro and listed her medications as hydrocodone, Xanax, Premarin and Zoloft;

68.  A December 1, 2004 office note from Dr. Morris indicating Barr complained of neck and back pain, confusion and poor memory. Morris assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain, lumbosacral sprain/strain, fibromyalgia and confusion-secondary to Fibromyalgia. He listed her medications as hydrocodone, Xanax, Zoloft, Premarin, Effexor and administered a trigger point injection;

69.  A December 8, 2004 office note from Dr. Morris indicating Barr complained of neck and back pain and wanted her left ear checked. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, anxiety syndrome and skin infection of the face. He prescribed Xanax and Bactroban cream and listed her medications as Effexor, hydrocodone, Premarin and xoloft;

70.   A December 13, 2004 Physical Residual Functional Capacity Assessment indicating Barr can occasionally lift and/or carry 20 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk for a total of at least 2 hours in an 8 hour work day, sit for a total of about 6 hours in an 8 hour work day and must periodically alternate sitting and standing to relieve pain and discomfort, has unlimited ability to push and/or pull, has no postural limitations, can never climb ladders, ropes, scaffolds, can frequently climb ramps/stairs, can balance, stoop, kneel, crouch, crawl, has no manipulative, visual or communicative limitations, and must avoid exposure to extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation extreme cold, hazards;

71.   A December 21, 2004 office note from Dr. Morris indicating an assessment of fatigue. He prescribed a B-12 shot and noted her medications as Effexor, hydrocodone, Premarin, Xanax and Zoloft;

72.   A January 3, 2005 office note from Dr. Morris indicating complaints of a cough, stuffy head and aching all over. He assessed bronchitis, sinusitis, acute, cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain, lumbosacral sprain/strain and fibromyalgia. He prescribed Augmentin, OMT DAT, Phenergan VC with codeine and noted her medications as Effexor, hydrocodone, Premarin, Xanax and Zoloft;

73.   A January 7, 2005 Psychiatric Review Technique from Charles J. Mihelic, indicating that Barr's impairment was not severe and was controlled with medication. He determined that she had mild restriction on activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, and pace and had had no episodes of decompensation of extended duration;

74.   A February 8, 2005 office note from Larry L. Fitzwater, PAC, indicating complaint of a headache in the front part of her head of three days duration. He assessed sinusitis, acute, and bronchitis. He prescribed Basin, gave Barr a B-12 shot and noted her medications as Effexor, hydrocodone, Premarin, Xanax and Zoloft;

75.  A February 9, 2005 West Virginia University Hospital discharge summary from Katrina Richards, MSIV and Shanthi Manivannan, M.D., indicating a discharge diagnosis of muscle spasms in neck, complicated migraine, history of type 2 herpes simplex virus meningitis in February 2004, history of migraines, history of fibromyalgia and depression. Barr was discharged with instructions to resume her home medications and follow up with her primary care physician;

76.  A February 22, 2005 office note from Dr. Morris indicating a follow-up appointment after hospitalization for headache and noting that Barr continued to complain of a headache. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain and cephalgia. He noted her medications as Effexor, hydrocodone, Premarin, Xanax, Zoloft and Lexapro;

77.  A March 1, 2005 office note from Dr. Morris indicating Barr complained of left ear pain with lymph tenderness and facial pressure. He assessed cervical region sprain/strain. He noted her medications as Effexor, hydrocodone, Premarin, Xanax and lexapro;

78.  A March 17, 2005 office note from Larry L. Fitzwater, PAC, indicating Barr complained of left ear pain with itching and a feeling of wetness.  Barr reported that if felt like something was in her ear.  He assessed ear pain and prescribed Araigan ear drops and a follow-up ENT appointment. He noted her medications as Effexor, hydrocodone, Premarin, Xanax, Zoloft, Lexapro and Xanax XR;

79.  A March 22, 2005 office note from Dr. Morris indicating Barr complained of back pain. He assessed lumbar sprain/strain, lumbosacral sprain/strain, fibromyalgia, cervical region sprain/strain and dorsal/thoracic sprain/strain. He prescribed OMT DAT and a trigger point injection.  He advised Bar to stop smoking and to start some regular exercise. He noted her medications as Effexor, hydrocodone, Premarin, Xanax, Zoloft, Lexapro and Xanax XR;

80.  An April 14, 2005 office note Dr. Morris indicating a B-12 injection for anemia. He noted her medications as Effexor, hydrocodone, Premarin, Xanax, Zoloft, Lexapro and Xanax XR;

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

81. An April 21, 2005 office note from Dr. Morris indicating an assessment of cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain, lumbosacral sprain/strain. He listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

82. An April 26, 2005 office note from Dr. Morris indicating Barr complained of back pain for several days and inability to move. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain, lumbosacral sprain/strain. He listed medications as Effexor, hydrocodone, Premarin, Xanax and Lexapro;

83. A May 6, 2005 office note from Dr. Morris indicating Barr complained of neck and back pain. He assessed dorsal/thoracic sprain/strain, lumbar sprain/strain, cervical region sprain/strain. He listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

84. A May 20, 2005 office note from Larry L. Fitzwater, PAC, indicating Barr complained of a sore throat of three days duration, headache and sleepiness. He an assessment of pharyngitis and prescribed Motrin (over the counter), Onmicef and swizzle. He listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

85. A June 15, 2005 office note from Dr. Morris indicating an assessment of anemia and a B-12 injection;

86. A June 17, 2005 office note from Larry L. Fitzwater, PAC, indicating Barr complained of lower abdominal pain. He assessed cystitis, acute and prescribed Bactrim and instructed Barr to drink lots of water and to return for a urinalysis when her urine was clean. He listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

87. A June 18, 2005 CT scan report from Frederick J. Gabriele, Jr., M.D., indicating evidence of sigmoid colon diverticulosis without diverticulitis or free fluid, urinary bladder unremarkable and symphysis publis unremarkable;

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

88.  A July 20, 2005 office note from Dr. Morris indicating Barr complained of neck and back pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain, lumbosacral sprain/strain. He gave her a B-12 shot and listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

89.  A July 29, 2005 office note from Larry L. Fitzwater, PAC, indicating Barr complaint of panic attack. He assessed dizziness, anemia, anxiety syndrome, polyuria, polydipsia, fatigue. He listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

90.  An August 2, 2005 office note from Dr. Morris indicating Barr complained of neck and back pain, anxiety and anxiety attacks. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, lumbar sprain/strain, lumbosacral sprain/strain. He listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

91.  An August 12, 2005 office note from Dr. Morris indicating an assessment of anemia and macrocytic (weak blood with small blood cells). He gave her a B-12 injection and listed medications as Xanax XR, Xanax, hydrocodone, Premarin and lexapro;

92.  An August 18, 2005 office note from Sandra Cunningham, D.C., indicating a clinical impression of cervical, thoracic, lumbar, and pelvic segmental dysfunction resulting in pain complicated by mm rigidity and over activity, as well as fibromyalgia with complication from degenerative disc disease in the cervical spine and a treatment plan for two visits a week for three weeks and exercise activity designed to help with fibromyalgia. She also directed Barr to perform some type of activity for 30 minutes a day maybe in the form of breathing exercises, as well as yoga and walking exercises. She also counseled Barr on diet modifications to help her fibromyalgia pain syndrome;

93.  An August 19, 2005 office note from Larry L. Fitzwater, PAC, indicating Barr complained of sinus pressure, stuffy head, cough and headaches. He assessed sinusitis, acute, bronchitis and prescribed Omnicef, Zyrtec D, Vicoprofen, more fluids and listed medications as Xanax XR, Xanax, hydrocodone, Premarin and Lexapro;

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

94. A September 7, 2005 office note from Larry L. Fitzwater, PAC, indicating Barr complained of abdominal bloating and constipation. He assessed irritable bowel syndrome, lumbar sprain/strain, cervical region sprain/strain, anxiety syndrome. He listed medications as Xanax, hydrocodone, Premarin, Lexapro and Zyrtec D;

95. A September 26, 2005 office note from Dr. Morris indicating Barr complained of back pain and thick green cough for one month. She also reported panic attacks, a trigger point in her right shoulder, coughing up bright red blood and requested a B-12 shot. He assessed somatic dysfunction of the upper extremity, sinusitis, acute, bronchitis and prescribed Augmentin and Phenergan. He listed medications as Xanax, hydrocodone, Premarin, Zyrtec D and Lexapro;;

96. A September 29, 2005 cervical spine x-ray report from Joseph Migaiolo, M.D., indicating an impression of disc space narrowing at C5-C6, otherwise normal alignment and no acute fracture or suluxation;

97. An October 5, 2005 office note from Dr. Morris indicating a follow-up regarding Barr's neck and back pain. He assessed cervical region sprain/strain, dorsal/thoracic sprain/strain, costochondritis and prescribed OMT DAT & CS and three trigger point injections. He listed medications as Xanax, hydrocodone, Premarin, Zyrtec D and Lexapro; and

98. An October 5, 2005 office note from Bryan K. Hosler, D.C., indicating an examination of the entire spine.

> Entire Spine: Visualized osseous structures are grossly intact and exhibit normal overall density and internal architecture. The sacroiliac and coxa articular relationships appear preserved. Right inferior pelvic unleveling with a compensatory left thoracolumbar spinal inclination is observed. Mild apophyseal articular degenerative alteration is demonstrated at L4/l5 and L5/S1. Mild intervertebral disc space narrowing involving multiple mid to lower thoracic

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

segments is noted. Flattening of the cervical
lordosis is observed, accompanied by a right-
sided cervical listing and corresponding right
lateral head tilt. Moderate disc space
narrowing is demonstrated at C5/C6.

Conclusion: moderate discogenic spondylosis
involving C5-6, cervical arcual kyphosis
accompanied by altered spinal biomechanics,
mild multi-segmental thoracic discogenic
spondylosis, mild degenerative facet atrophy
involving L4-5 and L5-S1, right inferior
pelvic unleveling with a compensatory left
thoracolumbar spinal inclination, which is
most likely related to muscle spasticity
and/or intersegmental dysfunction. The
possibility of a leg length discrepancy cannot
be excluded.

## V.   OBJECTIONS

Barr's objections to the R&R contend that the Magistrate Judge
erred in determining that she had failed to cite a Fourth Circuit
case to support her argument that an ALJ errs as a matter of law if
he bases a credibility analysis and disability determination solely
on a claimant's ability to perform selected daily activities and
ignores the other evidence of record, including the claimant's own
reports of pain or limitations. In his response to Barr's
objections, the Commissioner argues that recent Fourth Circuit case
law does not change the long-standing rule that an ALJ must
consider numerous factors, including activities of daily living,
when performing a credibility analysis.

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

## VI.  DISCUSSION

### A.  Credibility Analysis

Barr contends that the Magistrate Judge erred as a matter of law in determining she had failed to cite a Fourth Circuit case to support her argument that an ALJ cannot base his credibility analysis solely on her ability to perform certain daily activities. Barr relies on Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), to support her argument that the ALJ erred by selectively limiting the evidence he considered in his assessment of her credibility.  The Commissioner contends that the ALJ's credibility analysis was correct because, pursuant to Fourth Circuit case law and 20 C.F.R. §§ 404.1529(a) and 416.929(a), he considered the record as a whole in his analysis.

In Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), the Fourth Circuit held that it is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence, and that a court's scope of review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings and whether he applied the correct law. A court is not permitted to substitute its judgment for that of the Secretary. Id.  Accordingly, the Court will uphold the ALJ's findings as long

as there is substantial evidence in the record to support them.
Id.

20 C.F.R. § 404.1529 provides:

> In determining whether you are disabled, we
> consider all your symptoms, including pain,
> and the extent to which your symptoms can
> reasonably be accepted as consistent with the
> objective medical evidence and other evidence.
> By objective medical evidence we mean medical
> signs and laboratory findings as defined in
> §404.1528(b) and (c). By other evidence, we
> mean the kinds of evidence described in
> §§404.1512(b)(2) through (6) and
> 404.1513(b)(1), (4), and (5) and (e). These
> include statements or reports from your
> treating or examining physician or
> psychologist, and others about your medical
> history, diagnosis, prescribed treatment,
> daily activities, efforts to work and any
> other evidence showing how your impairment(s)
> and any related symptoms affect your ability
> to work. We will consider all of your
> statements about your symptoms, such as pain,
> and any description you, your physician, your
> psychologist, or other persons may provide
> about how the symptoms affect your activities
> of daily living and your ability to work.
> However, statements about your pain or other
> symptoms will not alone establish that you are
> disabled; there must be medical signs and
> laboratory findings which show that you have a
> medical impairment(s) which could reasonably
> be expected to produce the pain or the
> symptoms alleged and which, when considered
> with all of the other evidence (including
> statements about the intensity and persistence
> of your pain or other symptoms which may
> reasonably be accepted as consistent with the

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

medical signs and laboratory findings), would lead to a conclusion that you are disabled.

SSR 96-7p provides:

PURPOSE: The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effect; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision. In particular, this Ruling emphasizes that:

1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements

about the symptom(s) and its functional effects.

. . .

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case records. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5. It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p further provides :

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques; however, their effects can often be clinically observed . . . . The examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from, or be associated with, the symptom of pain. <u>When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects . . . . A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility</u>.

(Emphasis added).

Here, the ALJ determined:

The medical evidence indicates that the claimant has fibromyalgia, migraine headaches, lumbar strain, and anxiety disorders, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The claimant's Fibromyalgia and migraine headaches, best evaluated under consideration of Sections in 1.00 and in listing 11.04, and her lumbar strain, best evaluated under listing 1.04, did not show an inability to ambulate effectively or to perform fine and gross movement effectively. The undersigned believes that Ms. Barr's OCD satisfied the 'A' criteria, but did not satisfy the 'B' severity criteria in the four functional domains. The claimant only had a

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

> 'mild' degree of functional limitation in the
> following: 1) Activities of daily living. 2)
> Difficulties in maintaining social
> functioning. 3) 'Moderate' difficulties in
> maintaining concentration, persistence, or
> pace. 4) 'None' in episodes of decompensation,
> each of extended duration. . . The
> Administrative Law Judge agrees with the state
> agency that Ms. Barr does not have a mental
> health impairment that precludes all
> competitive work-related activities. There was
> no medical evidence to show that Ms. Barr had
> a significant work-related depressive
> impairment.

Thus, the ALJ determined that Barr had impairments that could cause her alleged pain. Pursuant to 20 C.F.R. § 404.1529 and SSR 96-7p, he then analyzed the evidence to make a proper credibility determination based on the record as a whole.

At the hearing, for example, the ALJ questioned Barr extensively regarding her activities of daily living.

Q    Now, I want to talk to you some about how you spend your time during the day. What time, generally, do you go to bed at night?

A    About 9:00.

Q    And are you able to go to sleep right away?

A    No.

Q    And what time is it before you go to sleep?

A    About 11:00. That's usually when I take the Xanax.

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

---

Q    And with your medicine, are you able to sleep all through the night?

A    Yes.

Q    And what time do you get up in the morning?

A    6:30.

Q    And what do you do in the morning?

A    On a good day, I get my daughter dressed to go to school. And - -

Q    Do you take her to school?

A    No.

Q    How does she get to school?

A    She rides the bus.

Q    Okay.  And does the bus pick up at the house or do you have to walk her somewhere?

A    She walks down to the end of the road.  She's 9 and - -

Q    Okay.

A    And there's been lots of days that my husband has been late for work by if he had to take her or get her ready or - -

Q    Okay.  So on a good day, you're able to get up and get your daughter off to school. And then on a good day, what do you do with the rest of your morning?

A    Like the night before, he'll carry the laundry down and do it, fold clothes.

Q    Do you, are you able to do any of the other housework on a good day?

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

A    On a good day, the dishes.

Q    Do you cook?

A    Yeah.

Q    So on a good day, are you generally able to be up and doing things most of the day?

A    Yeah, but I got to sit down. I've got to take breaks. When, even on a good day, I've got to sit down and take a break.

Q    Okay. How often, generally, do you take a break?

A    Between a half hour, if I'm up doing something, then I'll sit down for about ten minutes. And on days that I'm really spasm, I've got to be walking around the house because if not, if I sit in the chair, it makes it worse.

Q    Okay. So when you say you take a break, you're just talking about sitting down?

A    Yeah.

Q    And resting?

A    Yes.

Q    Okay. Now what about days that aren't good days?

A    The days that aren't good days, my husband takes my child to school. I have a hard time getting out of bed. I, I can't explain the pain other than it, it feels like I've got, if anybody knows what, I mean, if you've had the flu, that's what I feel like. I feel like I've had the flu. And on those days, then I wonder again and talk to my doctor, it makes me want to not be here. I was fine until after, after I, the only thing I can think of is after I had my hysterectomy. I was fine until then. I've never had to go through this. Basically, I'm in bed with heating pads.

*        *        *

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Q     Now, does your daughter participate in any kind of school activities?

A     She plays basketball.

Q     And are you able to attend her games and thing like that?

A     There's been a couple that I've attended, but mostly my husband goes.

Q     So you do any other activities?

A     No.  She's in caravan [phonetic] at church.

Q     And what's that?

A     It's like a scout program.

Q     Okay.  Are you, do you participate in that with her?

A     I've went down to church with her.  She, they go to different classes and done that.  There's been lots of times that he takes her.

Q     And do you - -

A     But then most of the times, I've had to miss church because of this.

Q     Okay.  Do you go to church regularly?

A     Yeah.

Q     How often are you able to go during the month?

A     About two times.  But I talk to my pastor all the time.

Q     In person or by phone?

A     On the phone and in person.

Q     And do you go to - - is it a woman or a man?

32

A    Man.

Q    Do you go to him or does he come to you?
A    He's came to my house and I went to him.

Q    Okay.  Do you go to the grocery store and go shopping and things like that?

A    On a good day I've went there, but I can't carry them back in.  My husband's there to do it.

Q    What about trips, vacations, things like that?

A    I can't do long rides or vacations.  The only thing we did was back in 2004, was that last year?

Q    Uh-huh.

A    No.  Yeah.  We went to Yochum's Vacation Land [phonetic]. He got us a cabin and that's right after I had my meningitis and I still had the pickline [phonetic] in and we stayed in that, in that cabin the whole time.

                    *          *          *

A    February – –

Q    I think the record shows '04.  Does that sound right?

A    Yeah because that would have been, we went after that.

Q    Okay.  Sharma, on your good days, do you think you'd be able to work?

A    No.  I don't.

Q    Why not?

A    I have to take breaks.  The good days, it's still, the pain's still there and I never know when I'm going to have a flare.

                    *          *          *

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

[RE-EXAMINATION OF CLAIMANT BY ALJ]

Q     Some of this is, goes way back because your alleged onset date is in '01, so you've got to help me out in the four years and a half since your alleged onset date.    Now, she's been in basketball how long?   How many winters?

A     Just this, just this year.

Q     Just this year.    And how many games have you gone to counting practices?

A     Counting practices?

Q     Uh-huh.

A     Four.

Q     When did basketball start, in October?

A     Yeah.

Q     And what is the church activity she does, Ms. Barr?   It's called caravan?

A     Yeah.

Q     And what does that mean?   It's an outreach program perhaps?

A     Yeah.   It's an outreach for children.

Q     For them to help others or to help them?

A     Yes.

Q     Okay.   So they go to, where would the van go typically?

A     To the senior center.

Q     Okay.   And then they work with the older people?

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

A     Yes.

Q     And how many times have you gone with her?

A     I've never went on one of those.

Q     Okay.   Church is twice a week.  Other, sometime, twice a month.  Sometimes you talk to the pastor.  Is it, he comes to your house did you say?

A     Yes.

Q     How many times a month does he come over?

A     This past month, he come twice, but on a average, about once.

Q     Are you going to have Thanksgiving at your house?

A     Yes.

Q     How many are coming?

A     Just my mom and grandma.

                    *          *          *

Q     Do you go, do you all go out even over these four years?

A     Going out like - -

Q     To movies, to dinner, to, I know you went on the one trip, but things like that?

A     We went and seen two movies and - -

Q     How about to the park, walk, where do you walk?

A     He's walk, over to the park.  We live [INAUDIBLE] the park.  Yeah.

Q     What's the name of the park?

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

A       Huff Park [phonetic].

Q       Huff Park.  And so you'll walk there occasionally?

A       Uh-huh.

*               *               *

Q       Do you have friends?

A       Yes.

Q       How many?

A       Good friends?  Two good - -

Q       Let's say good friends.

A       Two good friends.

Q       And what do you all do together, if anything?  How are they friends?

A       I have one for, that she's been my friend for ages that we talk and she's my support.

Q       Does she come over and you go to the - -

A       Yeah.  She comes over to my house.

Q       When you do drive your ten to 15 a week, Ms. Barr, where do you go?

A       I go to Dr. Morse and usually I go to the grocery store and Minington [phonetic] to Fairmont by myself.

The ALJ also reviewed all of the medical evidence in the record and concluded that Barr was not precluded from performing a

range of sedentary work.  Significantly in his findings, the ALJ

specifically noted:

- The June 10, 2004 report from Dr. Ponieman's consultative physical examination indicating Barr's effort was fair and providing a diagnosis of fibromyalgia, anxiety disorder with panic attacks, TMJ dysfunction with failed medical management, history of scoliosis, excessive fatigue and migraine headaches. The ALJ indicated that he assigned significant weight to Dr. Ponieman's evaluation because it was based on objective medical and clinical evidence;

- The February 21, 2003 to October 27, 2004 medical treatment reports from Dr. Morris, Barr's primary care physician, indicating treatment for a variety of generalized health complaints. The ALJ indicated that he assigned appropriate weight to Dr. Morris' notes regarding her various complaints of pain but noted that he did not believe that the treatment reports indicated that Barr was precluded from all work-related activity;

- The May 18, 2004 consultative psychological evaluation from Tina Yost, Ed.D. indicating a diagnosis of Obsessive-Compulsive Disorder under control with medication, fibromyalgia, scoliosis, migraines, TMJ by self-report. The ALJ indicated that he assigned significant weight to Dr. Yost's evaluation and determined that the findings support a decision that Barr is not precluded from performing the basic mental requirements for work-related activities;

- A July 9, 2004 state agency Physical Residual Functional Capacity Assessment("PRFC") indicating Barr had the ability to perform medium physical exertional activities;

- A December 13, 2004 reconsideration PRFC indicating Barr had the ability to perform a wide range of sedentary physical exertional activities;

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

- A July 8, 2004 state agency Psychiatric Review Technique Form from Dr. Capage indicating that Barr satisfied the "A" criteria of the listing but failed to satisfy the "B" criteria because she had only mild restrictions in her activities of daily living, social functioning, and concentration, persistence, and pace and no episodes of decompensation lasting for an extended duration. The ALJ indicated that, even though he agreed with the state agency's determination that Barr does not have a mental health impairment that precludes all competitive work-related activities, he believed that a 'moderate limitation in concentration, persistence, or pace was more appropriate; and

- A July 9, 2004 PRFC from Fulvio Franyutti indicating that Barr appeared to magnify her symptoms and that her allegations were not fully supported by the findings, and that she was capable of performing medium work.

Clearly, the ALJ reviewed all of the evidence of record and assigned the proper weight to the medical evidence prior to determining that Barr's statements regarding her limitations were not entirely credible. This Court, therefore, concludes that the Magistrate Judge correctly determined that the ALJ's credibility analysis was based on all of the evidence of record as a whole and was not limited solely to Barr's reported activities of daily living.

B.    <u>Argument Regarding Relevant Fourth Circuit Authority</u>

Barr argues that in his R&R the Magistrate Judge incorrectly stated that she had failed to cite a Fourth Circuit case in support

of her objection regarding whether certain routine, mundane activities of daily living can establish a lack of disability.  In her motion for summary judgment, Barr relied on <u>Hines v. Barnhart</u>, for support of her argument that an ALJ cannot base a credibility determination solely on selected activities of daily living. Any assertion by Barr that <u>Hines</u> is factually identical to her case and should control the outcome here is misplaced, however,

In <u>Hines</u>, the appellee, Jeffery Hines, was a sickle cell disease ("SCD") patient. The Social Security Administration denied his claim for disability benefits because the ALJ concluded that Hines' claims of disabling pain were not supported by objective evidence. <u>Id</u>. at 561. The district court reversed this denial largely because Hines' complaints of pain were consistent with the unique characteristics of SCD. The Fourth Circuit affirmed that ruling, holding that the ALJ had applied an improper standard to discredit the treating physician's opinion and deny Hines' disability claim. <u>Id</u>. at 561.

In this case, the ALJ did not limit his review to objective evidence. Rather, he reviewed all of the evidence of record, including subjective evidence of Barr's pain and limitations, and her activities of daily living, assigned appropriate weight to the

## ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

medical opinions, observed Barr at the administrative hearing, and then, after a thorough analysis of these factors, determined, pursuant to <u>Craig v. Chater</u>, 76 F.3d 585,, 595 (4th Cir. 1996), that Barr's testimony about her limitations due to pain was not entirely credible.

In <u>Craig</u>, the Fourth Circuit established a two-prong analysis that an ALJ must apply to the determination of a claim of disability due to pain:

> . . . the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing
>
>> the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptom alleged.*
>
> 20 C.F.R. §§416.929(b) & 404.1529(b) (emphasis added): cf. 42 U.S.C. § 423(d)(5)(A) ('There must be medical signs and findings . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged . . . .') It is significant that the current regulations, like the statute upon which they were based, *see* 42 U.S.C. § 423(d)(5)(A), and paralleling the regulations which that statute purported to codify, *see* 20 C.F.R. §§ 416,929, 404.1529 (1983), were drafted using the definite article 'the' and the adjective 'alleged.' Therefore, for pain to be found to be

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

disabling, there must be shown a medically
determinable impairment which could reasonably be
expected to cause not just pain, or some pain, or
pain of some kind or severity, but *the pain the*
*claimant alleges she suffers*. The regulation thus
requires at the threshold a showing by objective
medical evidence of the existence of a medical
impairment 'which could reasonably be expected to
produce' the actual pain, in the amount and degree
alleged by the claimant.

. . . At this stage of the inquiry, the pain
claimed is not directly at issue; the focus is
instead on establishing a determinable
underlying impairment – a statutory
requirement for entitlement to benefits, *see*
42 U.S.C. §1382c(a)(3)(A) – which could
reasonably be expected to be the cause of the
disabling pain asserted by the claimant.

Id. at 594.

Craig also provides:

[t]his is not to say, however, that objective
medical evidence and other objective evidence
are not crucial to evaluating the intensity
and persistence of a claimant's pain and the
extent to which it impairs her ability to
work. They most certainly are. Although a
claimant's allegations about her pain may not
be discredited solely because they are not
substantiated by objective evidence of pain
itself or it severity, they need not be
accepted to the extent they are inconsistent
with the available evidence, including
objective evidence of the underlying
impairment, and the extent to which that
impairment can reasonably be expected to cause
the pain the claimant alleges she suffers.

Id. at 595.

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

In <u>Hines</u>, the Fourth Circuit adhered to <u>Craig</u>'s two prong analysis, holding that, on the undisputed facts before it, there was sufficient evidence that SCD causes the type of pain from which Hines suffered, and that the ALJ had selectively ignored evidence that Hines' chronic pain prevented him from working a full eight-hour day. In contrast, the ALJ in this case based his credibility determination on all of the evidence of record, including the inconsistencies in the objective medical evidence of record that failed to support Barr's subjective allegation of debilitating pain. For example, the ALJ found that Barr's testimony of pain and limitation of activities were not entirely credible because

(1)they were inconsistent with Dr. Ponieman's clinical findings;

(2) they were not supported by objective diagnostic studies, including CT scans of the head, pelvis and abdomen, x-rays of the cervical and lumbar spine, and a full spine x-ray;

(3) they were inconsistent with Barr's own statements that she was self-sufficient with her activities of daily living, that her headache, upper back pain and neck pain significantly improved with treatment and exercise, and that medication had helped with depression;

(4) they were inconsistent with the opinion of the state agency medical consultant who reviewed the evidence in December 2004;

(5) they were inconsistent with Dr. Yost's clinical findings;

(6) they were inconsistent with the opinions of the state agency psychological consultants who reviewed the evidence in June 2004 and January 2005;

(7) they were inconsistent with Barr's activities, which included watching television, crafts, horseback riding, taking her daughter to the school bus, exercising, preparing meals, grocery shopping, walking with her husband, playing cards with a friend,, performing household activities, going to basketball games and scouting activities with her daughter, going to church, and going on vacation; and

(8) significantly, they were inconsistent with the absence of any medical source opinions that Barr's physical and mental health impairments would preclude all competitive work-related activities, see Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (holding that the Commissioner is entitled to rely not only on what the record says, but also on what it does not say). Moreover, Barr's allegations were inconsistent with Dr. Belcher's description of

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Barr in February 2004 as ambulatory, independent, able to care for self, fully cognitive and alert and oriented.

Upon <u>de novo</u> review, this Court finds that, under applicable Fourth Circuit precedent, the Magistrate Judge correctly determined that there is substantial evidence of record, including, but not limited to, Barr's testimony about her pain and regarding her activities of daily living, to support the ALJ's credibility determination. <u>Hines v. Barnhart</u> does not require a different conclusion. It, therefore, affirms the Secretary's adverse decision on disability.

## VII. <u>CONCLUSION</u>

Barr's objections have not raised any issues that were not thoroughly considered by Magistrate Judge Seibert in his R&R. Moreover, the Court, upon an independent <u>de novo</u> consideration of all matters now before it, is of the opinion that the R&R accurately reflects the law applicable to the facts and circumstances before the court in this action. Therefore, the Court

**ORDERS** that Magistrate Judge Seibert's Report and Recommendation be accepted in whole and that this civil action be

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

disposed of in accordance with the recommendation of the

Magistrate. Accordingly,

1.   The defendant's motion for Summary Judgment (Docket No.
     11) is **GRANTED**;

2.   The plaintiff's motion for Summary Judgment (Docket No.
     10) is **DENIED**; and

3.   This civil action is **DISMISSED WITH PREJUDICE** and **RETIRED**
     from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment

order. Fed.R.Civ.P. 58.

The Clerk of the Court is directed to transmit copies of this

Order to counsel of record.

DATED: March 27, 2008


                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE